IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CYNTHIA GAIL RODRIGUEZ,<br>    PLAINTIFF, | § § § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-825-Y |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,<br>    DEFENDANT. | § § § § § § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

#### I. STATEMENT OF THE CASE

Plaintiff Cynthia Gail Rodriguez ("Rodriguez") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). In December 2009 and January 2010, Rodriguez filed her applications, alleging that her disability began on October 31, 2009. (Tr. 63, 174-81.) Her applications for benefits were denied initially and on reconsideration. (Tr. 63, 123-30, 134-39.) The ALJ held a hearing on

1

June 13, 2011 and issued a decision on July 28, 2011, finding that Rodriguez was not disabled because she could perform her past relevant work as a retail clerk, office assistant, collection clerk, and teacher's assistant. (Tr. 60-118.) On September 20, 2012, the Appeals Council denied Rodriguez's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-5.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is

severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor

substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.   ISSUES

In her brief, Rodriguez presents the following issues:

1. Whether the ALJ erred in finding that Rodriguez engaged in substantial gainful activity between October 2010 and June 2011;

2. Whether the ALJ failed to properly weigh the medical evidence in the record;

3. Whether the ALJ failed to properly evaluate Rodriguez's credibility; and

4. Whether the ALJ erred in relying on flawed vocational expert ("VE") testimony.

(Plaintiff's Brief ("Pl.'s Br.") at 1; *see* Pl.'s Br. at 11-23.)

### IV.   ALJ DECISION

In his July 28, 2011 decision, the ALJ found that Rodriguez met the disability insured status requirements in the SSA on October 31, 2009, the date she alleged that she had become disabled, and that Rodriguez met the insured status requirements of the SSA through at least September 30, 2014. (Tr. 71.) The ALJ further found that Rodriguez did not engage in substantial gainful activity from October 31, 2009 through October 10, 2010 but she had engaged in such activity from October 11, 2010 through June 4, 2011. (Tr. 71.) The ALJ concluded that Rodriguez suffered from the following severe impairments: "history of Waldenstrom's macroglobulinemia/lymphoplasmacytic lymphoma, chronic fatigue, herpetic neuralgia, alcohol dependence, major depressive disorder, and attention deficit hyperactive disorder." (Tr. 71; *see* Tr. 64.)   Next, the ALJ held that none of Rodriguez's impairments, or combination of

4

impairments, met or equaled the severity of any impairments in the Listing. (Tr. 64, 71.) As to Rodriguez's residual functional capacity ("RFC"), the ALJ stated:

> The claimant retains the functional capacity to perform exertional requirements of light activity (lifting/carrying occasionally 20 pounds and 10 pounds frequently, standing/walking 6-hours in an 8-hour workday, and sitting 6-hours in an 8-hour workday), pushing/pulling limited to light weight, occasional postural changes, overhead reaching occasional bilaterally, no concentrated exposure to temperatures extremes, minimal changes to routine work setting, and no fast pace production jobs.

(Tr. 71; see Tr. 70.) Next, the ALJ found, based on the VE's testimony, that Rodriguez was able to perform her past relevant work as a retail clerk, office assistant, collection clerk, and teacher's assistant. (Tr. 70-71.) Thus, the ALJ concluded that Rodriguez was not disabled. (Tr. 71-72.)

## V. DISCUSSION

### A. Substantial Gainful Activity

Rodriguez argues that the ALJ erred in finding that she engaged in substantial gainful activity from October 11, 2010 through June 4, 2011. (Pl.'s Br. at 11; see Tr. 71.) Rodriguez claims that the ALJ "failed to consider records from Ms. Rodriguez's employer that document during the period at issue she only [worked] 40 hours or more a week only three weeks over the course of eight months."[1] (Pl.'s Br. at 11.) Rodriguez further argues that the ALJ failed to discuss the evidence showing that the records document she had seven unexcused absences and only worked part-time many weeks during this eight-month period. (Id.) The Court, however, does not need to consider this issue because Rodriguez was not harmed by such finding as the ALJ proceeded to Step Four of the sequential evaluation process. See Faulkner v. Astrue, No.

---

[1] The Court notes that the ALJ, in an earlier section of his decision, stated that Rodriguez engaged in substantial gainful activity from October 4, 2010 through June 4, 2011. (See Tr. 64.)

5

7:10-CV-081-BK, 2011 WL 2669139, at *5 (N.D. Tex. July 6, 2011) ("Plaintiff acknowledges that he was not harmed by the ALJ's findings on remand that he engaged in substantial gainful activity from 2003 to 2007, since the ALJ proceeded to step five of the sequential evaluation process."); see also Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988) (reversal is appropriate only if the claimant shows that he was prejudiced); Rodriguez v. Astrue, No. EP-10-CV-00378-RFC, 2012 WL 123970, at *4 (W.D. Tex. Jan. 17, 2012). Consequently, remand is not required as to this issue.

### B. Medical Opinion Evidence in the Record

Rodriguez makes several arguments in this section of her brief. (Pl.'s Br. at 12-19.) However, her most persuasive argument is that the ALJ's RFC determination is not supported by substantial evidence because the ALJ "failed to cite to any medical opinions or other persuasive evidence that supports this conclusion." (Pl.'s Br. at 18.) RFC is what an individual can still do despite his limitations.[2] Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. Id.; see Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. Id. The RFC is a function-by-function assessment, with both

---

[2] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. Perez v. Barnhart, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. Id.

exertional and nonexertional[3] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at 3-6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 416.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *Id.* The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7C, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (superseded only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") In reviewing the ALJ's decision, a

---

[3] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

In this case, as stated above, the ALJ found that Rodriguez had the RFC to perform the full range of light work[4] as long as she was limited to (1) pushing/pulling light weight, (2) occasional postural changes, (3) occasional overhead reaching bilaterally, (4) no concentrated exposure to temperatures extremes, (5) minimal changes to routine work setting, and (6) no fast pace production jobs.[5] (Tr. 70-71.) In making this RFC determination, the ALJ analyzed the opinions and treatment records of several physicians. However, there were only a limited number of physician's opinions that gave an opinion as to the **effects** that Rodriguez's impairments had on her ability to work.

To begin with, Dr. James H. Bordelon, M.D. ("Dr. Bordelon"), Rodriguez's treating oncologist, opined, *inter alia*, in a "Multiple Impairment Questionnaire" dated April 26, 2010

---

[4] Pursuant to the regulations, light work is defined as follows:

Light Work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b). The primary difference between sedentary and most light jobs is that light work requires a good deal of walking or standing. SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983). "'Frequent' means occurring from one-third to two-thirds of the time." *Id.* at *6. "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Id.* "Sitting may occur intermittently during the remaining time." *Id.*

[5] Prior to making the RFC determination, the ALJ found, in analyzing Rodriquez's mental impairments, that Rodriquez was mildly restricted in her activities of daily living, had mild difficulties in maintaining social functioning, and had moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 68.)

that Rodriguez: (1) could sit four to five hours in an eight-hour workday; (2) could stand/walk up to one hour in an eight-hour workday; (3) could not sit continuously in a work setting and should get up and move around every hour; (4) could lift/carry up to 20 pounds occasionally; (5) had moderate limitations in grasping, turning, and twisting objects with both hands; (6) had no limitations in using her fingers and hands for fine manipulation; and (7) had moderate limitations in using her arms for reaching, including overhead reaching. (Tr. 65; *see* Tr. 500-07.) After analyzing Dr. Bordelon's Questionnaire, as well as his treatment records, the ALJ stated that he "has considered Dr. Bordelon's findings" (Tr. 65.) The ALJ, however, failed to indicate what weight, if any, he was giving to Dr. Bordelon's opinions.

In addition, Lige B. Rushing, Jr., M.D. ("Dr. Rushing"), an independent medical examiner, examined Rodriguez on June 7, 2011. (Tr. 66, *see* Tr. 847-58.) In a Multiple Impairment Questionnaire, Dr. Rushing opined, *inter alia*, that Rodriguez could sit for eight hours in an eight-hour day and stand/walk up to one hour in an eight-hour day. (Tr. 853.) Dr. Rushing also opined that Rodriguez could lift/carry up to five pounds frequently and up to twenty pounds occasionally. (Tr. 854.) Dr. Rushing further stated that Rodriguez was moderately limited in her ability to (1) grasp, turn, and twist objects; (2) use her fingers and hands for fine manipulations; and (3) use her arms for reaching, including overhead reaching. (Tr. 855.) Dr. Rushing further found that Rodriguez suffered from depression and needed to avoid noise, fumes, gases, temperature extremes, and dust. (Tr. 857.) As to Dr. Rushing's opinions, the ALJ stated that his opinions were not consistent with the findings of Rodriguez's

treating physicians and, thus, "great weight cannot be given to his opinion after this one time examination." (Tr. 66.)

Furthermore, Sandra Davis, M.D. ("Dr. Davis"), Rodriguez's treating psychiatrist, opined, *inter alia*, in a "Psychiatric/Psychological Impairment Questionnaire" dated April 26, 2010 that Rodriguez was markedly limited in her ability to (1) remember locations and work-like procedures; (2) understand and remember one or two step or detailed instructions; (3) carry out simple one or two-step instructions or detailed instructions; (4) maintain attention and concentration for extended periods; (5) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (6) sustain ordinary routine without supervision; (7) work in coordination with or proximity to others without being distracted by them; (8) make simple work-related decisions; (9) complete a normal workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (10) interact appropriately with the general public; (11) ask simple questions or request assistance; (12) accept instructions and respond appropriately to criticism from supervisors; and (13) respond appropriately to changes in the work setting. (Tr. 767-68; *see* Tr. 67.) In addition, Dr. Davis found that Rodriguez was moderately limited in her ability to (1) get along with co-workers or peers without distracting them or exhibiting behavioral extremes and (2) maintain social appropriate behavior and adhere to basic standards of neatness and cleanliness. (Tr. 768.) Dr. Davis further opined that Rodriguez was incapable of even low work stress and diagnosed Rodriguez with alcohol

10

dependence in partial remission, ADHD, and moderate and recurrent major depressive disorder. (Tr. 764; *see* Tr. 67.)

On May 3, 2010, Dr. Davis also completed a Mental Status Report in which she diagnosed Rodriguez with alcohol dependence in partial remission, moderate and recurrent major depressive disorder, and ADHD. (Tr. 715; *see* Tr. 67.) She reported, *inter alia*, that Rodriguez's ability to sustain work was poor because she was unable to maintain jobs due to difficulty with others and overwhelming feelings of depression and anxiety. (Tr. 716; *see* Tr. 67.) She further indicated that Rodriguez's memory was intact, her attention and concentration were grossly intact and her insight and judgment was fair as she had some insight and poor judgment. (Tr. 715; *see* Tr. 67.) In analyzing Dr. Davis' opinions, the ALJ stated that she had "considered Dr. Davis's opinion regarding the claimant's inability to work, but this is inconsistent with the claimant's ability to work." (Tr. 68.)

There are also State-Agency Medical Consultant ("SAMC") opinions in the record. In a "Physical Residual Functional Capacity Assessment" dated February 26, 2010, Kelvin Samaratunga, M.D. ("SAMC Samaratunga"), opined, in essence, that Rodriguez was capable of performing light work. (Tr. 382-89.) In a "Psychiatric Review Technique" form also dated February 26, 2010, Michele Chappuis, Ph.D. ("SAMC Chappuis"), opined that Rodriguez's mental impairments were not severe as she (1) was only mildly restricted in her activities of daily living and in maintaining concentration, persistence, or pace; (2) had no limitations in maintaining social functioning; and (3) had no episodes of decompensation. (Tr. 378.) In analyzing the SAMC opinions, the ALJ stated:

11

> Pursuant to 20 CFR 404.1527 and 416.927 and Social Security Ruling 96-6p, the Administrative Law Judge has considered the determinations issued by the state agency medical consultants at the prehearing stages. They found that the claimant was capable of a full range of light work activity (Exhibit 7F). They also determined that the claimant's mental impairments were not severe (Exhibit 6F). Since the record contains new and material evidence, the determinations made by state agency medical consultants are not accorded significant weight.

(Tr. 68.)

Citing to *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) and *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), Rodriguez claims that the "record must contain evidence of the effects of the claimant's medical conditions have on her ability to work for the ALJ's RFC to be valid." (Pl.'s Br. at 19.) In *Ripley*, the ALJ found that the claimant could perform sedentary work even though there was no medical evidence or testimony to support that conclusion. 67 F.3d at 557. The Fifth Circuit Court of Appeals, noting that the record contained a vast amount of evidence establishing that the claimant had a back problem[6] but not clearly establishing the effect that condition had on his ability to work, remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557-58. The Fifth Circuit rejected the Commissioner's argument that the medical evidence that discussed the extent of the claimant's injuries substantially supported the ALJ's conclusion because the Court was unable to determine the effects of the claimant's condition, "no matter how 'small,'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 558 n.27.

---

[6] "The evidence that was available for review by the ALJ shows a four year history of surgery, medical examinations, and complaints of pain" as well as the claimant's testimony. *Ripley*, 67 F.3d at 557.

In the present case, the ALJ, in essence, rejected all of the opinions of the physicians that had opined on the effects that Rodriguez's impairments had on her ability to work. "While the ALJ may choose to reject these opinions, he cannot then independently decide the effects of Plaintiff's . . . impairments on [his] ability to work, as that is expressly prohibited by *Ripley*." *Shugart v. Astrue*, No. 3:12-CV-1705-BK, 2013 WL 991252, at *5 (N.D. Tex. Mar. 13, 2013). It is unclear exactly what medical evidence the ALJ based his RFC determination that Rodriguez could perform the full range of light work[7] with certain limitations.

As to Dr. Bordelon's opinions, the ALJ failed to indicate what weight, if any, that he assigned to such opinions. *See* 20 C.F.R. §§ 404.1527, 416.927 (stating that the ALJ should weigh all of the medical source opinions and articulate the reasons underlying the decisions he has made); *see also Ross v. Colvin*, No. 4:12-CV-283-Y, 2013 WL 5423980, at *9 (N.D. Tex. Sept. 27, 2013) ("The ALJ was required to articulate the weight given to the medical opinions in the record.") Moreover, Dr. Bordelon's opinions do not support the ALJ's RFC determination

---

[7] Pursuant to the regulations, light work is defined as follows:

> Light Work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b). The primary difference between sedentary and most light jobs is that light work requires a good deal of walking or standing. SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983). "'Frequent' means occurring from one-third to two-thirds of the time." *Id.* at *6. "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Id.* "Sitting may occur intermittently during the remaining time." *Id.*

that Rodriguez could perform the full range of light work, with some restrictions.[8] As to the opinions of Drs. Rushing and Davis, it is clear that the ALJ, in essence, rejected their opinions as they also did not indicate that Rodriguez could perform the full range of light work, with some restrictions. The only physician that opined that Rodriguez could perform the requirements of light work was SAMC Samaratunga. However, the ALJ did not accord the opinions of the SAMCs significant weight because the record contained new and material evidence since the time their opinions were issued. (Tr. 68.)

In addition, Rodriguez had not testified that she could perform the requirements of light work (*see* Tr. 69) and no other physician, other than those discussed above, had given such an opinion when specifically discussing the effects that Rodriguez's impairments had on her ability to work (as opposed to general treatment notes setting forth routine examination observations). Consequently, "at [this] point, it became incumbent upon the ALJ to obtain an expert medical opinion about the types of work activities that Plaintiff could still perform given [his] impairments." *Shugart*, 2013 WL 991252, at *6 (citing *Ripley*, 67 F.3d at 557.) The ALJ, however, failed to do so. Because the ALJ rejected all medical opinions in the record that might explain the effects of Rodriguez's impairments on her ability to perform work, there is no evidence supporting the ALJ's RFC determination.[9] Consequently, substantial evidence does not support the ALJ's RFC determination, and remand is required.

---

[8] Even though it is unclear from the ALJ's decision, the Defendant agrees that the ALJ, in essence, rejected the opinions of Dr. Bordelon. (Defendant's Brief at 5-7.)

[9] *See Williams v. Astrue*, 355 F. App'x 828, 831-32 (5th Cir. 2009) (reversing and remanding where the ALJ rejected the opinions of the claimant's treating physicians and relied on his own medical opinions as to the limitations presented by the claimant's back problems in determining RFC); *Nesbitt v. Colvin*, No. 3:12-CV-98-BN, 2013 WL 5299261, at *5 (N.D. Tex. Sept. 20, 2013) ("While the ALJ may choose to reject [a doctor's] opinions, she

Because the Court is recommending remanding the case, the Court will not consider the remaining issues. However, the Court notes that its finding that the RFC determination is not supported by substantial evidence will necessarily impact some of these other issues. Upon remand, the ALJ should reconsider these additional issues as well.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings of fact and conclusions of law.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed

---

cannot then independently decide the effects of Plaintiff's mental impairments on her ability to perform work-related activities, as that is prohibited by *Ripley*."); *Shugart*, 2013 WL 991252, at *5-6; *Mitchell v. Colvin*, No. 3:11-CV-2664-BN, 2013 WL 4546729, at *9 (N.D. Tex. Aug. 28, 2013) ("It is acceptable for the ALJ to make an assessment that Dr. Van Ness's conclusions should not receive significant weight and also to discount other medical sources, with the proper analysis, but the remaining record must include substantial evidence to support the ALJ's ultimate disability decision."); *Harris v. Astrue*, No. 11-2738, 2012 WL 3150049, at *11 (E.D. La. July 12, 2012); *Newsome v. Barnhart*, No. 3:03-CV-3030-D, 2004 WL 3312833, at *4 (N.D. Tex. Oct. 8, 2004) ("Similarly, although the instant record contains some substantial evidence that [the claimant] suffers from 'mild' fibromyalgia that has improved with medication, the record lacks substantial evidence to support the ALJ's findings concerning *the effect* of this condition on her work-related abilities, i.e., that she can perform light work."). *Cf. Carter v. Colvin*, No. 3:12-CV-01896-BF, 2013 WL 3328691, at *10 (N.D. Tex. July 2, 2013) (finding that ALJ did not violate the standards set forth in *Ripley* because the ALJ considered roughly 523 pages of medical evidence in formulating the RFC determination, including an RFC assessment performed by a doctor in a consultative examination).

findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **December 16, 2013** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December 2, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

16